OPINION
Appellant, Crystal Nuttall, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children to Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
Appellant is the biological mother of Cortney, Robert and Chiann Nuttall. Robert Nuttall ("Nuttall") is the biolgical father of Cortney and Robert. Jerry Lee Brown is the alleged father of Chiann.
BCCSB became involved with the children in 1996 after receiving referrals alleging that Nuttall physically abused Cortney and Robert. Appellant reported that Nuttall was abusing crack cocaine and that she left him on thirty-two prior occasions because he was physically abusing her. The trial court adjudicated Cortney and Robert as abused and dependent, and Chiann as dependent. The trial court adopted the case plan created for appellant by BCCSB.
Appellant failed to comply with the court adopted case plan. Specifically, she did not submit to drug screening, obtain mental health counseling, participate in protective day care programs or obtain stable housing. Appellant admitted to daily use of crack cocaine and marijuana for several years. The trial court ordered appellant to attend drug treatment and counseling programs.
Appellant successfully attended individual counseling. Appellant was discharged from a drug treatment program as a result of her continued use of cocaine and marijuana. Appellant finally completed an in-patient drug treatment program, but failed to attend community "aftercare" programs.
Appellant obtained stable housing in 1999 with the assistance of BCCSB. Appellant's new fiancée, a man alleged to be an illegal alien from Mexico, assisted her in maintaining the residence. After an incident of domestic violence, appellant separated from her fiancée and he moved out of the home. Appellant was unable to pay rent and was evicted. Appellant moved into a motel, where she continues to reside.
On April 27, 2000, the trial court granted permanent custody of Cortney, Robert and Chiann to BCCSB. Appellant appeals this decision of the trial court and raises one assignment of error.[1]
Assignment of Error No. 1:
 THE TRIAL COURT'S DECISION PLACING CUSTODY WITH THE BCCSB IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
In her assignment of error, appellant argues that the trial court failed to find by clear and convincing evidence that it was in the best interest of Cortney, Robert and Chiann to grant permanent custody of them to BCCSB. Appellant argues that she has a strong love for her children and that there was no evidence that she mistreated them.
Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will not reverse a finding by a trial court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented. Id. at 479. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In reWilliam S. (1996), 75 Ohio St.3d 95.
A trial court may not award permanent custody of a child to a state agency unless the agency satisfies two statutory factors. First, the agency must demonstrate that an award of permanent custody is in the best interest of the child. R.C. 2151.414(D). Second, the agency must show that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent. Id.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, includ-ing whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D)
In this case, the trial court found by clear and convincing evidence that it would be in the best interest of Cortney, Robert and Chiann to award permanent custody to BCCS. The trial court specifically found several of the factors listed in R.C. 2151.414(D) applicable to the children.
Although appellant continually visited the children on a regular basis, Robert and Chiann have formed strong bonds with their foster parents. See R.C. 2151.414(D)(1). All three children have been in foster homes since July 1997. At that time, Chiann was three years old, Robert was two years old and Chiann was about one year old. Cortney and Robert have been in the same foster home for about one year and Chiann has been in the same foster home since July 1997. See R.C. 2151.414(D)(3).
The trial court found that the children are in need of a legally secured permanent placement because they "have languished in foster care for two and one-half years." See R.C. 2151.414(D)(4). Appellant was unable to obtain stable housing for nearly two years. Appellant finally obtained stable housing in 1999 with the assistance of BCCSB. However, appellant depended upon her fiancée to help maintain the residence. After an incident of domestic violence, appellant separated from her fiancée and he moved out of the home. Appellant was unable to pay rent and was evicted. Appellant moved into a motel, where she continues to reside. When the trial court decided to grant permanent custody of the children to BCCSB appellant still had not obtained a suitable permanent residence for her children.
The trial court found that an award of permanent custody to BCCSB would be in the best interest of Cortney, Robert and Chiann. The trial court also found that the children cannot and should not be placed with appellant, noting that appellant's "behavior and follow-through speaks for itself." Appellant does not specifically challenge this finding of the trial court.
We agree with the trial court's conclusions. Appellant had nearly three years to procure stable employment, obtain adequate housing and to control her substance abuse problems. Although the record indicates that appellant may have made progress dealing with her substance abuse, she utterly failed to create a stable environment for her children. Her employment has been erratic and by the time of the final hearing in this case, appellant was living in a motel.
We hold that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and these findings are supported by clear and convincing evidence. Appellant's assignment of error is overruled.
 ________________________ POWELL, P.J.
YOUNG, P.J., and VALEN, J., concur.
[1] Nutall never completed any BCCSB case plans adopted by the trial court. His last court appearance was in March 1998. The whereabouts of Chiann's alleged father, Jerry Lee Brown, is unknown. The trial court found the children could not and should not be placed with either man. Neither has appealed the trial court's decision.